# Illinois Official Reports

## Appellate Court

<div style="border:1px solid">

## *Hanmi Bank v. Chuhak & Tecson, P.C.*, 2018 IL App (1st) 180089

</div>

| | |
|---|---|
| Appellate Court Caption | HANMI BANK, Plaintiff-Appellant, v. CHUHAK & TECSON, P.C., MICHAEL GILMARTIN, and CARY FLEISHER, Defendants-Appellees. |
| District & No. | First District, Sixth Division<br>Docket No. 1-18-0089 |
| Filed<br>Rehearing denied | December 7, 2018<br>January 9, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 17-L-2449; the Hon. Diane Shelley, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Schiff Gorman, LLC, of Chicago (Elliot R. Schiff, of counsel), for appellant.<br><br>Flaherty & Youngerman, P.C., of Chicago (Michael J. Flaherty and Christopher L. Gallinari, of counsel), for appellees. |
| Panel | JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.<br>Presiding Justice Delort and Justice Harris concurred in the judgment and opinion. |

**OPINION**

¶ 1    The plaintiff-appellant, Hanmi Bank (the Bank), appeals from the judgment of the circuit court of Cook County which dismissed its legal malpractice complaint against the defendants-appellees, Chuhak & Tecson, P.C., Michael Gilmartin, and Cary Fleisher (collectively, the defendants). The court ruled that the action was barred by the statute of limitations and that the Bank could not assert equitable estoppel to overcome the statute of limitations. For the following reasons, we reverse the judgment of the circuit court of Cook County and remand the case for further proceedings.

¶ 2                                    BACKGROUND

¶ 3    This legal malpractice lawsuit arises from several mortgage foreclosure actions related to loans that the Bank[1] made in 2005 to various borrowers (the borrowers) secured by mortgages on properties in Illinois and Wisconsin.

¶ 4                                 *The Illinois Lawsuits*

¶ 5    In 2009, while represented by other counsel prior to retaining the defendants (predecessor counsel), the Bank filed several foreclosure actions against the borrowers alleging that the loans were in default (the 2009 Illinois lawsuits). Six of these lawsuits were filed in the circuit court of Cook County, and one lawsuit was filed in the United States District Court for the Northern District of Illinois. By July 2011, the 2009 Illinois lawsuits had all been voluntarily dismissed without prejudice.

¶ 6    On July 17, 2011, while still represented by predecessor counsel, the Bank filed a 29 count complaint in the United States District Court for the Northern District of Illinois against the borrowers, again alleging that the loans were in default (the 2011 Illinois lawsuit). The Bank then hired the defendants as its new counsel, and the defendants replaced predecessor counsel in representing the Bank in the 2011 Illinois lawsuit.

¶ 7    On January 9, 2012, the Bank, while represented by the defendants, voluntarily dismissed the 2011 Illinois lawsuit. The defendants were aware that the 2009 Illinois lawsuits had previously been dismissed and therefore the dismissal of the 2011 Illinois lawsuit would be the second voluntary dismissal of the Bank's foreclosure claims against the borrowers.

¶ 8                                  *The Counterclaim*

¶ 9    Meanwhile, the borrowers filed a declaratory judgment action against the Bank in the circuit court of Cook County seeking to bar any anticipated new actions to foreclose on the properties. On July 17, 2011, the Bank filed a 29 count counterclaim against the borrowers, alleging, *inter alia*, breach of notes and guaranties (the counterclaim). Following the voluntary dismissal of the 2011 Illinois lawsuit, the borrowers filed a motion to dismiss the Bank's counterclaim pursuant to section 13-217 of the Code of Civil Procedure (Code). 735

---

[1]The 2005 loans were made by the Mutual Bank of Harvey. On July 21, 2009, federal regulators closed the Mutual Bank of Harvey. United Central Bank then entered into a purchase and assumption agreement, securing assignment of the Mutual Bank of Harvey's mortgages, notes, and guarantees. In 2015, United Central Bank merged into Hanmi Bank.

ILCS 5/13-217 (West 2012) (providing that plaintiffs are granted only a one-time right to refile a claim within one year of a voluntary dismissal). On June 5, 2013, the trial court granted the borrowers' motion and dismissed the Bank's counterclaim. In its order, the trial court explained that the Bank had already refiled its foreclosure claims when it filed the 2011 Illinois lawsuit and that section 13-217 of the Code barred the Bank from refiling the same claims a third time in the counterclaim. See *Health Cost Controls v. Sevilla*, 307 Ill. App. 3d 582, 589 (1999) ("[a] counterclaim is an independent cause of action, separate from a complaint, and it must stand or fall on its own merits"). On March 21, 2015, the trial court denied the Bank's motion for reconsideration.

¶ 10     The defendants advised the Bank that the trial court's ruling was "illogical" and "unsupported by any case in Illinois" and assured the Bank that the ruling would be reversed on appeal. Upon the advice of the defendants and with the defendants as its counsel, the Bank appealed the trial court's order dismissing the counterclaim. On December 5, 2016, this court affirmed the trial court's dismissal of the Bank's counterclaim, holding that it was essentially the third filing of the foreclosure action and was therefore barred by the single-refiling rule. *Fourth Street Villas, LLC v. United Central Bank*, 2016 IL App (1st) 151194-U, ¶ 20.[2] According to the Bank, while the appeal of the counterclaim was pending, the defendants internally considered that the Bank may have a potential legal malpractice claim against them regarding the dismissal of the 2011 Illinois lawsuit. The defendants then notified their malpractice insurer about a possible malpractice lawsuit against them by the Bank.

¶ 11                                    *The Wisconsin Lawsuit*

¶ 12     On July 20, 2011, at the same time the Bank filed the 2011 Illinois lawsuit while represented by predecessor counsel, the Bank also filed a foreclosure action in the United States District Court for the Eastern District of Wisconsin (the Wisconsin lawsuit). The Wisconsin lawsuit sought to foreclose on the Wisconsin properties that were the subject of the 2009 Illinois lawsuits and 2011 Illinois lawsuit. On June 7, 2013, after the 2011 Illinois lawsuit had been voluntarily dismissed, the federal district court in Wisconsin entered summary judgment against the Bank in the Wisconsin lawsuit. In its order, the federal district court noted that Illinois law applied and that the Bank was precluded from asserting its foreclosure claims because of *res judicata* and the single-refiling rule under section 13-217 of the Code. On October 17, 2013, the federal district court then denied the Bank's motion for reconsideration.

¶ 13     Following the denial of the motion for reconsideration, the defendants advised the Bank that the district court's ruling was "illogical" and had "misconstrued Illinois law."[3] According to the Bank, the defendants "falsely claimed that the Circuit Court of Cook County had so far ruled differently" and "further advised [the Bank] that there was a specific statute existing in Illinois that provides [*sic*] when a complaint is filed, the defendant parties

_____

[2]Our supreme court recently reaffirmed the single-refiling rule and held that a plaintiff cannot file a substantially similar foreclosure action a third time merely by labeling the new cause of action as a breach of a promissory note when the substance of that action is identical to the prior foreclosure actions, *i.e.*, based on the same default of the same note. *First Midwest Bank v. Cobo*, 2018 IL 123038, ¶ 42.

[3]This was during the same time period that the defendants were also advising the Bank that the trial court's ruling on the counterclaim was "illogical" and would be reversed on appeal.

have an absolute right to refile a counterclaim even if barred by a statute of limitations." The defendants thus assured the Bank that the federal district court's order in the Wisconsin lawsuit would be reversed on appeal. The Bank accordingly appealed the order through the defendants, as its counsel. On August 28, 2015, the Seventh Circuit Court of Appeals affirmed the federal district court's dismissal of the Wisconsin lawsuit. *United Central Bank v. KMWC 845, LLC*, 800 F.3d 307 (7th Cir. 2015).

¶ 14                                            *The Instant Legal Malpractice Action*

¶ 15       On March 8, 2017, the Bank filed the instant action against the defendants in the circuit court of Cook County alleging legal malpractice. The three-count complaint included allegations that the defendants committed professional negligence by voluntarily dismissing the 2011 Illinois lawsuit. The complaint alleged that because of this negligence, the Bank was unable to successfully foreclose on any of the properties in the Illinois and Wisconsin lawsuits. The complaint further alleged that the defendants breached their fiduciary duty by making misrepresentations to the Bank that sought to conceal the defendants' potential liability for legal malpractice.

¶ 16       The defendants moved to dismiss the Bank's complaint pursuant to section 2-619(a)(5) of the Code (735 ILCS 5/2-619(a)(5) (West 2012)), arguing that the Bank's claims were time-barred by the statute of limitations under section 13-214.3(b) of the Code. 735 ILCS 5/13-214.3(b) (West 2012) (an action for damages against an attorney arising out of an act or omission in the performance of professional services must be commenced within two years from the time the person bringing the action knew or reasonably should have known of the injury for which damages are sought). The defendants' motion argued that the Bank knew or should have known about its injury when it received the two adverse decisions in June 2013 (the dismissal of the counterclaim lawsuit in the circuit court of Cook County and the dismissal of the Wisconsin lawsuit in the United States District Court for the Eastern District of Wisconsin) (the June 2013 adverse judgments). Therefore, the defendants argued that the Bank was time-barred from filing a legal malpractice claim against them after June 2015. The Bank responded that the defendants were equitably estopped from raising the defense of statute of limitations because they lulled the Bank into appealing the June 2013 adverse judgments and thus caused the Bank to wait to file its legal malpractice claim. The Bank argued that without the assurances of defendants, it would have questioned the defendants' advice earlier and filed a legal malpractice action. Following a hearing, the circuit court of Cook County issued an order granting the defendants' motion to dismiss the Bank's legal malpractice action, and therefore dismissed the Bank's cause of action against defendants with prejudice.

¶ 17       The Bank filed a motion for leave to file an amended complaint.[4] The motion attached a proposed amended complaint, repleading its same allegations of legal malpractice, as well as pleading that the defendants were estopped from raising the statute of limitations as a defense because they lulled the Bank into waiting to file its legal malpractice complaint. Following

---

[4]In their briefs, both parties claim that this motion was also a motion to reconsider or a motion to vacate judgment. The document in the record, however, states that it is only a motion for leave to file an amended complaint. Yet, based on the record, the trial court seemed to treat the motion as also a motion to reconsider and fully explained its reasoning for its original judgment.

another hearing, the court determined the issue to be; "when did [the Bank] know or should have known the cause of injury." The court further stated:

"Defendants correctly point out that [the Bank] had actual knowledge that [the Bank's] lawsuits had been dismissed due to defendants' conduct in previously dismissing the same action. Two separate judges in two separate forums gave the exact same reason as to the cause of the dismissal. [The Bank], a sophisticated banker, cannot claim that these decisions did not put it on notice of the injury and cause. *** In this case, there is no dispute that when the Seventh Circuit issued its decision on the Wisconsin claim on August 28, 2015, [the Bank] was advised of the injury and the cause of the injury. [Citation.] Nothing more was needed to put the plaintiff on notice that the defendants' January 9, 2012 dismissal [of the 2011 Illinois lawsuit] was the cause of injury. Therefore, even if [the Bank was] lulled into believing that [it] would win on appeal, the Seventh Circuit decision was the wake up call. It is unexplainable and unreasonable as to why [the Bank] did not file this action until eighteen months later. In order to benefit under the doctrine of equitable estoppel, the plaintiff must demonstrate diligence once it becomes clear that the defendant's conduct was the cause of any injury. [Citation.]"

The court then denied the Bank's motion to amend its complaint and concluded that "it is apparent that even after the proposed amendment the cause of action is still barred by the statute of limitations." This appeal followed.

¶ 18                                  ANALYSIS

¶ 19     We note that we have jurisdiction to review this matter as the Bank filed a timely notice of appeal following the trial court's denial of its motion for leave to file an amended complaint. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. July 1, 2017).

¶ 20     The Bank presents a single issue on appeal: whether the trial court erred in dismissing its complaint after finding that the defendants were not equitably estopped from asserting a statute of limitations defense. Although in its notice of appeal the Bank stated that it is also appealing the trial court's denial of its motion for leave to file an amended complaint, the Bank did not raise that issue until the very end of its reply brief. Normally, under those circumstances, the Bank would have forfeited its challenge to the trial court's denial of its motion for leave to file an amended complaint. See Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018) ("[p]oints not argued [in appellant's opening brief] are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing"). Nevertheless, forfeiture is a limitation on the parties, not the court, and we may exercise our discretion to review an otherwise forfeited issue. *Great American Insurance Co. of New York v. Heneghan Wrecking & Excavating Co.*, 2015 IL App (1st) 133376, ¶ 81 (Gordon, J., specially concurring). Accordingly, in the interest of justice, we exercise our discretion to consider the trial court's denial of the Bank's motion for leave to file an amended complaint and address that issue first as it is integrally related to the other issue and central to resolution of this case.

¶ 21     Section 2-616(a) of the Code provides that amendments to complaints may be allowed at any time before judgment, on just and reasonable terms. 735 ILCS 5/2-616(a) (West 2012). The decision to allow an amendment to a pleading rests within the sound discretion of the trial court, and absent an abuse of discretion, we will not disturb the trial court's decision. *Mandel v. Hernandez*, 404 Ill. App. 3d 701, 705 (2010). A trial court abuses its discretion

when no reasonable person would take the view adopted by the trial court. *Steele v. Provena Hospitals*, 2013 IL App (3d) 110374, ¶ 93. While the trial court does have wide discretion, "[a]ny doubt as to whether a plaintiff should be granted leave to file an amended complaint should be decided in favor of allowance of the amendment." *Mitchell v. Norman James Construction Co.*, 291 Ill. App. 3d 927, 939 (1997). In order to determine whether the trial court abused its discretion in denying a party leave to file an amended pleading, "we consider the following factors: '(1) whether the proposed amendment will cure the defective pleading; (2) whether the proposed amendment would surprise or prejudice the opposing party; (3) whether the proposed amendment was timely filed; and (4) whether the moving party had previous opportunities to amend.'" *CIMCO Communications, Inc. v. National Fire Insurance Co. of Hartford*, 407 Ill. App. 3d 32, 38 (2011) (quoting *Board of Directors of Bloomfield Club Recreation Ass'n v. Hoffman Group, Inc.*, 186 Ill. 2d 419, 432 (1999)).

¶ 22    We confine our analysis to the first factor, as it is the only one in dispute. The Bank's original complaint was defective because it alleged a legal malpractice claim outside of the statute of limitations. However, the Bank sought to cure that defect by seeking leave to file an amended complaint that would bar the defendants from using the statute of limitations as an affirmative defense. The trial court evidently believed that there was no basis on which to bar the defendants from asserting the statute of limitations defense to the complaint.

¶ 23    The Bank disagreed and asserted that the principle of equitable estoppel should be applied to bar the defendants from asserting the statute of limitations defense. Further, the Bank points out that the proposed amended complaint adequately pleaded the elements of equitable estoppel to bar the defendants from raising the statute of limitations defense. In order to establish equitable estoppel, the party claiming estoppel must demonstrate that (1) the other party misrepresented or concealed material facts, (2) the other party knew at the time the representations were made that the representations were untrue, (3) the party claiming estoppel did not know that the representations were untrue when they were made and when they were acted upon, (4) the other party intended or reasonably expected the representations to be acted upon by the party claiming estoppel or by the public generally, (5) the party claiming estoppel reasonably relied upon the representations in good faith to his or her detriment, and (6) the party claiming estoppel has been prejudiced by his or her reliance on the representations. *In re Parentage of Scarlett Z.-D.*, 2015 IL 117904, ¶ 25.

¶ 24    The Bank's proposed amended complaint pleaded these elements with the facts as previously described. Specifically, the Bank asserted (1) that the defendants misrepresented the law regarding the single-refiling rule while concealing from the Bank that it may have a malpractice claim against them; (2) that the defendants knew they had erred regarding the dismissal of the 2011 Illinois lawsuit and that prompted them to notify their liability insurer about a possible malpractice lawsuit; (3) that the Bank trusted the defendants' assurances and appealed the June 2013 adverse judgments based on that advice; (4) that the defendants never informed the Bank of their own doubts about the appeals and never advised it to seek a second opinion or new counsel; (5) that the Bank, based upon the defendants' assurances, did appeal the June 2013 adverse judgments in good faith; and (6) that the Bank ultimately relied upon the defendants' assurances to its own detriment because the appeals process caused the statute of limitations on the Bank's malpractice claim to expire.

¶ 25    The trial court was required to accept all well-pleaded facts as true, as well as any reasonable inferences that may arise from those facts. *Patrick Engineering, Inc. v. City of*

*Naperville*, 2012 IL 113148, ¶ 31. Based on that well-established principle of law, the Bank amply pleaded facts to meet the threshold of equitable estoppel.

¶ 26    The defendants argue that the Bank did not adequately plead equitable estoppel because it did not allege the first factor: that the defendants made a material misrepresentation or concealed a material fact. However, both the Bank's original complaint and its amended complaint pleaded that the defendants assured the Bank that the June 2013 adverse decisions were "illogical" and would be reversed. The Bank points out that these assurances were made by the defendants while they simultaneously notified their liability insurer about a possible malpractice lawsuit. The alleged fact that the defendants notified their liability insurer is a material fact. It goes to the crux of this case and suggests that the defendants knew they had committed an error. Yet, they concealed that fact from the Bank and continued to encourage the Bank to pursue a course of action which they knew was untrue and misrepresented the law.

¶ 27    The defendants do not deny that they notified their liability insurer about a possible malpractice claim stemming from the dismissal of the 2011 Illinois lawsuit. They do not even deny that they lulled the Bank into a false sense of security with respect to the propriety of the legal advice that they gave the Bank regarding the pursuit of an appeal. Instead, the defendants argue that the Bank should have rejected their legal advice when the Seventh Circuit Court of Appeals affirmed the dismissal of the Wisconsin lawsuit against the Bank.[5] During oral argument before this court, counsel for the defendants suggested that in order to avoid the statute of limitations issue, the Bank could and should have pursued its malpractice action against the defendants while still being represented by them. This defies the reality of legal representation and common behavior between trusted lawyers and their clients.

¶ 28    Allowing the Bank to file its amended complaint would not only be equitable, but it would also not prejudice the defendants in any way. See *Savage v. Mui Pho*, 312 Ill. App. 3d 553, 557 (2000) ("[t]he most important consideration is whether the allowance of the amendment furthers the ends of justice"); *Vision Point of Sale, Inc. v. Haas*, 226 Ill. 2d 334, 352 (2007) ("there is a broad overall policy goal of resolving cases on the merits rather than on technicalities"). It is clear by comparing the Bank's original complaint, which did not plead equitable estoppel, to its proposed amended complaint, which quite clearly pleaded all the elements of equitable estoppel, that the defects in the original complaint were cured.[6] See *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 274-75 (1992) (if, after comparing the two complaints, the defects have clearly been cured, the amended complaint should be allowed). Accordingly, the trial court abused its discretion by denying the Bank leave to file its proposed amended complaint. We reverse the trial court's judgment and remand the case to the circuit court of Cook County so that the Bank can file its proposed amended complaint. The issue of whether the original complaint was dismissed in error is

---

[5]We note that this argument is flawed, as well as the trial court's comment that the Seventh Circuit's decision was the "wake up call" for the Bank, because by the time the Seventh Circuit's decision in the Wisconsin lawsuit was issued, in August 2015, the statute of limitations had already expired.

[6]It is arguable that the original complaint *did* adequately plead equitable estoppel by alleging that the defendants *lulled* the Bank into appealing the June 2013 adverse decisions.

therefore moot and we need not address it.

¶ 29                                 CONCLUSION

¶ 30        For the foregoing reasons, we reverse the judgment of the circuit court of Cook County and remand the matter for further proceedings consistent with this opinion. On remand, the Bank is allowed to file its proposed amended complaint.

¶ 31        Reversed and remanded.